

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75050-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| PAUL TIMOTHY CHASE, | ) | |
| | ) | |
| Petitioner. | ) | FILED: December 26, 2017 |
| | ) | |

LEACH, J. — Paul Chase, shareholder and principal officer of Red Leaf Construction Inc., appeals the trial court's partial denial of his motion to suppress Red Leaf's bank records. A commissioner of this court granted discretionary review. We consider, as a matter of first impression, whether a shareholder or officer of a closely held corporation has a personal privacy interest in the corporation's financial information. We hold that neither has this personal privacy interest and affirm.

## FACTS

In 2007, Paul Chase incorporated Red Leaf Construction Inc., a closely held corporation. Chase was the president, secretary, treasurer, and chairman of the board. His wife was the vice-president. In 2009, a former customer filed a civil claim against Red Leaf. In 2010, the customer sent a fraud referral to the Department of Revenue (Department), alleging that Chase and his company had

committed sales tax fraud. This referral was the Department's first indication that Red Leaf was conducting business. Red Leaf filed a tax return in 2007 showing no sales tax due but filed no further tax returns and paid no sales tax for the years 2008, 2009, and 2010.

After the referral, the Department began the audit process of Red Leaf. The Department mailed a summons to Chase demanding that he produce Red Leaf's bank records. The postal service returned the summons to the Department as undeliverable. The Department later issued administrative summonses to several banks. The Department sought records to assess Red Leaf's sales tax liability for the period beginning January 1, 2008, and ending August 31, 2011. It requested the following records: all bank statements, all bank signature cards, copies of all checks written, copies of the front and back of all checks deposited, a copy of the lease agreement, and copies of all invoices.

Banner Bank complied with the request. The Banner Bank records showed that Red Leaf collected sales tax from customers but did not pay it to the Department. The Department referred the case to the attorney general, who charged Chase with theft in the first degree.

Chase filed a motion to suppress Red Leaf's bank records. The trial court held that Red Leaf's bank records, except for Chase's social security number on

the signature cards,[1] were not subject to protection under article I, section 7 of the Washington State Constitution because they were not his personal or private records. In addition, the court concluded that even if the Department had violated Red Leaf's privacy rights, Chase did not have standing to assert that violation. Chase filed a motion for discretionary review. The State concurred in this request. This court granted review. The trial court stayed Chase's prosecution pending the outcome of this appeal.

## STANDARD OF REVIEW

When an appellate court considers a challenge to findings of fact in a suppression order, the court reviews the record before the trial court to determine whether substantial evidence supports the challenged findings.[2] Evidence is substantial when it is enough "'to persuade a fair-minded person of the truth of the stated premise.'"[3] When an appellant does not assign error to a finding of fact, the appellate court accepts that finding as true on appeal.[4] The appellate

---

[1] The trial court suppressed Chase's social security number on the bank signature cards because, unlike Red Leaf's financial information, the court determined Chase had a privacy interest in his social security number. The State does not challenge this ruling.

[2] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

[3] Garvin, 166 Wn.2d at 249 (quoting State v. Reid, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)).

[4] Dep't of Revenue v. March, 25 Wn. App. 314, 316, 610 P.2d 916 (1979).

court reviews challenged conclusions of law from a suppression order de novo.[5] It also reviews issues of standing de novo.[6]

## ANALYSIS

### I. "Private Affairs" under Article I, Section 7

Chase asserts that the Department's receipt of Red Leaf's bank records through issuance of an administrative summons violated his right against unlawful search and seizure under article I, section 7 of the Washington Constitution.[7] Article I, section 7 has two components: "'private affairs'" and "'authority of law.'"[8] If the defendant does not show that his private affairs were disturbed, there is no violation.[9] If a valid privacy interest has been disturbed, the reviewing court must determine whether the disturbance was justified by authority of law.[10]

Chase claims that he has a personal privacy interest in the financial information in Red Leaf's bank records. Article I, section 7 protects "'those

---

[5] Garvin, 166 Wn.2d at 249.

[6] State v. Magneson, 107 Wn. App. 221, 224, 26 P.3d 986 (2001).

[7] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Article I, section 7 protections are broader than those afforded in the Fourth Amendment to the United States Constitution. See generally State v. Reeder, 184 Wn.2d 805, 813-14, 365 P.3d 1243 (2015).

[8] Reeder, 184 Wn.2d at 814 (internal quotation marks omitted) (quoting In re Pers. Restraint of Maxfield, 133 Wn.2d 332, 339, 945 P.2d 196 (1997)).

[9] Reeder, 184 Wn.2d at 814.

[10] Reeder, 184 Wn.2d at 814.

privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass.'"[11] In State v. Miles[12] and State v. Reeder,[13] our Supreme Court held that individuals have a privacy interest in their personal bank records held by a third party.[14] The court reasoned that private bank records could potentially reveal sensitive personal information, such as "where the person has traveled, the person's reading habits, and the person's financial condition."[15]

Here, both parties contend that Miles controls. Although both parties characterize Red Leaf's bank records as Chase's business bank records, they advocate for opposing outcomes based on their differing interpretations of the holding in Miles. We distinguish this case from Miles.

In Miles, the State demanded, by administrative subpoena, banking records from all accounts used by Miles and did not limit its request to business records.[16] Our Supreme Court rejected the State's argument for a reduced expectation of privacy based on Miles's participation in the pervasively regulated

---

[11] Reeder, 184 Wn.2d at 814 (internal quotation marks omitted) (quoting Maxfield, 133 Wn.2d at 339).
[12] 160 Wn.2d 236, 156 P.3d 864 (2007).
[13] 184 Wn.2d 805, 365 P.3d 1243 (2015).
[14] Miles, 160 Wn.2d at 244, 251-52; Reeder, 184 Wn.2d at 814-15.
[15] Reeder, 184 Wn.2d at 814.
[16] Miles, 160 Wn.2d at 251.

securities industry in part because the State's subpoena allowed "intrusion into matters outside the records or scope of the regulated industry."[17]

But here the Department limited its request to a corporation's business records. The Department issued administrative summonses to four banks for Red Leaf's bank records. The Department did not issue a summons for Chase's personal bank records. A corporation's bank records are not an individual's personal bank records. "A corporation exists as an organization distinct from the personality of its shareholders."[18] Moreover, "a corporation's separate legal identity is not lost merely because all of its stock is held by members of a single family or by one person."[19] Thus, although Chase was the president, secretary, treasurer, and chairman of the board of Red Leaf and his wife was the vice-president, Red Leaf remained a separate legal entity.

In addition, a distinction exists between the criminal responsibility of a corporation[20] and the criminal responsibility of a corporate officer in his personal capacity.[21] This division underscores that corporations and corporate officers

---

[17] Miles, 160 Wn.2d at 251.

[18] Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 552, 599 P.2d 1271 (1979).

[19] Grayson, 92 Wn.2d at 553.

[20] RCW 9A.08.030(2) delineates in what circumstances a corporation can be criminally charged.

[21] An individual may be personally criminally liable for conduct "he or she performs or causes to be performed in the name of or on behalf of a corporation to the same extent as if such conduct were performed in his or her own name or behalf." RCW 9A.08.030(3).

acting in their personal capacities maintain distinct legal obligations and interests. As the trial court correctly decided, Red Leaf's bank records are not Chase's personal bank records. The State's demands did not intrude beyond the corporation's business activities into Chase's private affairs. Thus, Miles does not control this case.

This court must therefore decide, as an issue of first impression, whether a corporate officer has a personal privacy interest in the corporation's financial transactions described in its bank records. To determine "whether a particular expectation of privacy is one that a citizen of this state should be entitled to hold," this court must engage in a two-part inquiry.[22]

First, we must examine whether the interest has been protected historically as part of an individual's private affairs.[23] For example, in State v. McKinney,[24] the Washington Supreme Court analyzed a 1937 statute that created the Department of Licensing (DOL) and required it to maintain vehicle ownership and licensing information. Anyone could obtain vehicle registration information until the legislature amended the statute in 1990.[25] The 1990 amendment narrowed public access to information from the DOL but did not

---

[22] Reeder, 184 Wn.2d at 814.
[23] Reeder, 184 Wn.2d at 814.
[24] 148 Wn.2d 20, 27, 60 P.3d 46 (2002).
[25] McKinney, 148 Wn.2d at 27.

restrict release of information to law enforcement.[26] The court held that "[o]ur historical review of driver's license records does not support a conclusion that DOL licensing records constitute 'private affairs.'"[27]

Second, we must consider the nature and extent of the information that may be obtained by the challenged government conduct.[28] For example, in addition to private bank records, our Supreme Court has held that individuals have a privacy interest in their garbage that they place on the curb because garbage "could include sensitive information about business records, bills, correspondence, tax records, and so on."[29] Here, this two-part inquiry shows that Chase does not have a privacy interest in Red Leaf's financial information.

First, a corporation's financial transactions described in its bank records historically have not been considered part of a shareholder's or an officer's "private affairs." Also, records related to the collection of taxes have historically been available to the Department for audit. The Department issued summonses in this case in accordance with its authority under RCW 82.32.110. This statute dates back to 1935 and authorizes the Department to issue administrative summonses to determine a person's or entity's tax liability.[30] RCW 82.32.070

---

[26] McKinney, 148 Wn.2d at 28.
[27] McKinney, 148 Wn.2d at 29.
[28] Reeder, 184 Wn.2d at 814.
[29] Miles, 160 Wn.2d at 245.
[30] Under RCW 82.32.110, the Department may

was also first adopted in 1935 and states that "[e]very taxpayer liable for any tax collected by the department must [have his or her] books, records, and invoices . . . open for examination at any time by the department of revenue.[31] Thus, since 1935, taxpayers have been on notice that their financial records could be subject to random audit at the Department's discretion. This weighs against treating Red Leaf's financial information as Chase's private affairs.

Second, a corporation's financial transactions do not reveal sufficiently sensitive information about a person's personal contacts and associations to require the protections of article I, section 7. Records of a corporation's financial transactions do not pose the same risk of exposing, for example, a person's financial standing, personal reading habits, or personal travel register as do a person's personal bank records or a person's garbage. We thus conclude that neither a shareholder nor corporate officer has a privacy interest in the corporation's financial transactions described in its bank records. This means that Chase does not have a privacy interest in Red Leaf's financial information

---

examine any books, papers, records, or other data, or stock of merchandise bearing upon the amount of any tax payable or upon the correctness of any return, or for the purpose of making a return where none has been made, or in order to ascertain whether a return should be made; and may require the attendance of any person at a time and place fixed in a summons served by any sheriff in the same manner as a subpoena is served in a civil case, or served in like manner by an agent of the department of revenue.

[31] RCW 82.32.070(1).

disclosed in its bank records. The State did not violate Chase's article I, section 7 rights.

Because the Department did not intrude into Chase's private affairs with its summons demanding records of Red Leaf's financial transactions, we need not determine whether that administrative summons was sufficient authority of law under article I, section 7.

## II. Standing

Chase also claims that he has standing to challenge any search of Red Leaf's bank records. Generally, a person must have a legitimate expectation of privacy in the area searched or the property seized to have standing to challenge a search.[32] Because Chase does not have a privacy interest in Red Leaf's financial information and asserts no exception to the general standing rule, he did not have standing to challenge the Department's ability to obtain Red Leaf's financial information or the Department's authority to issue the particular summons at issue.

## CONCLUSION

Red Leaf's financial transactions contained in bank records' are not Chase's "private affairs." Thus, the Department did not violate Chase's rights under article I, section 7 when it obtained Red Leaf's financial information

---

[32] State v. White, 40 Wn. App. 490, 494, 699 P.2d 239 (1985).

through issuance of an administrative summons. And Chase does not have standing to contest the search. We affirm.

_Leach, J._

WE CONCUR:

_Spearman, J._          _Schindler, J._